IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JOHN M. BUSSARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-00561-CV-W-NKL-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff John M. Bussard ("Bussard") challenges the Social Security Commissioner's denial of Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. [Doc. # 7]. Specifically, Bussard asserts that the Administrative Law Judge ("ALJ") failed to find that Bussard was not under a disability as defined under the Act at any time from July 24, 2004, through the date of his unfavorable decision on Bussard's application. Having jurisdiction under 42 U.S.C. § 405(g), this Court finds that there is not substantial evidence in the record to support the ALJ's decision. The Commissioner's order is reversed and he is instructed to award benefits for a period of disability beginning July 24, 2004.

**I.     Factual Background**

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary. On October 25, 2005, Bussard filed his application for disability insurance benefits based on disability seeking a period of disability

1

commencing July 24, 2004, and disability insurance benefits under Title II of the Social Security Act. (Tr. 84-88). Bussard is 54 years old, a high school graduate, and last worked in July 2004.

Bussard has a good work history and a demonstrated motivation to work. (Tr. 17, 58). Bussard worked for the highway department for seven years, installing signs and driving trucks, before a serious groin injury forced him to quit. Pain and swelling from the original injury have persistently afflicted Bussard. (Tr. 286-88). Prior to working for the highway department, Bussard ran a printing press for three years, before he was fired for absences due to migraine headaches and anxiety accompanied by panic attacks. Before his work at the printing press, Bussard worked as a landscaper. (Tr. 289-90). Bussard suffers from migraine headaches; chronic sinusitis, the treatment of which led to discovery and, as of 2005, successful treatment of thyroid cancer; back and groin pain; and, anxiety developed independently of other injuries, but was magnified by those injuries and accompanying treatment.

### A. Medical History

#### 1. Physical Injury

Bussard injured his groin in 2003 and underwent hernia surgery in January 2004. right inguinal pain. Franey diagnosed right inguinal strain and recommended non-steroidal anti-inflammatory medication, warm compresses, and refraining from heavy lifting or straining for two weeks. (Tr. 151).

2

On January 6, 2004, Gregory Boyd, D.O. ("Boyd"), followed up on Bussard's complaints of groin pain. Boyd ordered an ultrasound imaging which revealed a large right epididymal head cyst, and small bilateral hydroceles. (Tr. 164, 166).[1]  According to Bussard, recurring pain and swelling from the injury interfere with his ability to work because he has to sit and use ice packs for swelling. The swelling occurs randomly and strenuous work can cause swelling. (Tr. 293-94).

On October 15, 2006, Bussard injured his back when he was trying to unload a golf cart from a trailer. (Tr. 291-92).[2]  A physical examination conducted by Boyd revealed palpable muscle spasm of the lumbar spine, and positive straight leg raising on the right. Boyd diagnosed Bussard with sciatica, migraine headaches, and depression.  Boyd noted Bussard was in obvious distress and had pain with palpation of the lower lumbar spine, as well as palpable muscle spasm in the bilateral lumbar region. On October 28, 2006, Bussard presented for MRI of his lumbar spine.  The test revealed degenerative disc disease predominantly at L5-S1, where there was a small central disc protrusion and minimal disc bulge. (Tr. 274).  X-rays of the lumbar spine revealed mild degenerative changes predominantly at L3-L4 and L5-S1. Boyd prescribed Vicodin and Soma, as well as exercises. (Tr. 273, 275). Bussard testified that pain from his back and groin made it difficult to sit, at most for 90 minutes, and he could only stand for one hour at a time in addition to walking

---

[1]A hydrocele is a pathological accumulation of fluid in a body cavity.

[2]Bussard testified that he does not golf, but was transporting the cart from a marching band competition back to its owner. (Tr. 298).

3

several hundred yards and lifting 10 pounds. (Tr. 299-301). Bussard testified he takes hydrocodone daily for pain since his back injury in October, 2006. (Tr. 291, 294-95).

### 2. Headaches and Anxiety

After his groin injury, Bussard's anxiety, which he had experienced since age 19, worsened. He testified that he is unable to leave his house at times, and experiences panic attacks once or twice a week, usually when he is away from home. These attacks cause rapid heartbeat and give him a sense of impending doom. Since 1997, Bussard has been treated for anxiety by Michael Navato, M.D. ("Navato"), a psychiatrist with Kansas City Rehabilitation Consulants. On November 2, 2004, and again in January 2005, Bussard visited Navato and reported that he had injured himself at work and was on medical leave. Navato noted this had been problematic for Bussard and caused him to isolate himself. Navato instructed Bussard to continue with Imitrex, Klonopin, and Celexa, in addition to advising him to participate in stress reduction with therapy. (Tr. 147-48).

Upon being diagnosed with thyroid cancer, discussed below, Bussard's ear, nose and throat specialist, Festus Krebs, III, M.D. ("Krebs"), noted that Bussard was beginning to obsess on his diagnosis and was extremely anxious. (Tr. 171). On March 25, 2005, Bussard presented to Sajeev Menon, M.D. ("Menon"), for evaluation and management of thyroid disease. In his intake questionnaire, Bussard indicated he had been experiencing nervousness, irritability, anxiety, difficulty concentrating on one idea, depression, fatigue, and decreased appetite. Menon noted that Bussard had done well after surgery, but was currently having difficulties with headaches.

4

On July 8, 2005, Bussard visited Navato for a mental status exam which showed that his attention and concentration were good, but his affect was anxious. Navato diagnosed anxiety disorder and told him to continue with his previously prescribed treatments. (Tr. 146). On October 12, 2005, Bussard returned to Navato for treatment of increased anxiety after his thyroid surgery. Navato cautioned him about complying with his prescribed regimen and told him to continue his medications and group therapy. (Tr. 145). On December 20, 2005, Navato noted Bussard was more anxious and depressed and was worried about recurrence of his cancer since surgery and radiation. Navato diagnosed anxiety disorder and major depressive disorder and directed Bussard to continue his medications of Imitrex, Klonopin, and Celexa. (Tr. 245).

On January 10, 2006, Bussard returned to Dr. Navato for continued treatment. Navato reported his symptoms appeared to be stable with treatment with no apparent side effects. Navato stressed the need for medication compliance. (Tr. 244). On March 14, 2006, Bussard reported to Navato that he had been doing well so he had only been taking Klonopin. He took his first dose of Lexapro the preceding night and felt drowsy and slow at his appointment. Bussard reported symptoms of depressed mood, diminished interest and pleasure, fatigue, and feelings of worthlessness and guilt. Navato noted he was noncompliant and instructed him to continue his medications and therapy. He also provided a note for Bussard stating that he was unable to perform jury duty due to his anxiety and reduced attention. (Tr. 242-43). On April 18, 2006, Bussard reported symptoms of depressed mood, diminished interest and pleasure, fatigue, and feelings of worthlessness and guilt. Bussard said he had stopped taking

5

Lexapro after feeling tired. A mental status examination revealed mild depression. (T. 241). On a follow-up visit to Navato on June 26, 2006, Bussard reported continued symptoms of depressed mood, fatigue, and feelings of worthlessness.

On December 12, 2006, Margaret Weiler, LSCSW ("Weiler"), Bussard's therapist, completed a medical source statement of mental work-related impairments. Bussard attends weekly therapy sessions with Weiler. (Tr. 301-04). She reported Bussard suffered from major depression and anxiety and she had been providing individual therapy. She noted his response to treatment and his prognosis were poor. She indicated Bussard's ability to follow work rules, relate to co-workers, deal with public, use of judgment, deal with work stress, function independently, and maintain attention and concentration was poor. She reported he had no ability to interact with supervisors. She noted he had poor ability to understand, remember, and carry out simple job instructions. His ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability was also poor. In support of her assessment, Weiler noted that Bussard was unable to function, had difficulty leaving the house, and was not able to complete tasks. (Tr. 266-70).

On January 3, 2007, Navato completed a Medical Source Statement of Physical and/or mental Work-Related Impairments on Bussard. He reported Bussard suffered from anxiety and depression. He said Bussard had moderate to severe anxiety and his prognosis was guarded to fair. He indicated Bussard's ability to follow work rules, relate to co-workers, deal with public, interact with supervisors, deal with work stress, and maintain attention and concentration was poor. "Poor" was defined as the ability to function in this area is seriously

6

limited; less than satisfactory but not precluded. In addition, he indicated Bussard had poor ability to understand, remember and carry out detailed, but not complex, job instructions. He noted that Bussard had inattention and reduced concentration that caused these limitations. (Tr. 261-65). Bussard continues to experience panic attacks, agoraphobia, and depression despite his treatment regimen. (Tr. 150).

Bussard still experiences fatigue issues and lies down once a day for an hour or two. Bussard testified that he had suffered from migraines since 1987, and they had worsened since he quit working. He said he had about one a week before 2004, but currently had a migraine about every other day that could last anywhere from one hour to all day. Bussard believes they are related to his anxiety. (Tr. 295-97). Bussard takes Imitrex and hydrocodone for migraine headache relief which "helps". He also lies down in a dark room with an ice pack and no noise. (Tr. 297-98).

### B.     January 9, 2007 Hearing

At Bussard's disability hearing, Robert Karsh, M.D. ("Karsh"), testified that he did not address Bussard's psychiatric diagnoses because he did not feel qualified in that area. Karsh concluded that Bussard did not meet the listings with any of his physical ailments and was capable of light and medium work of all varieties. Karsh further noted that Bussard was taking medication for migraine headaches, but he said the record indicated Bussard probably suffered from sinus headaches. Although Bussard's MRI revealed degenerative disc disease, Karsh testified that he would place no limitations because of back problems. (Tr. 282-86).

7

Barbara Myers ("Myers"), a vocational expert, testified at the request of the ALJ. She testified that Bussard's past relevant work as a sign erector was skilled and medium; highway maintenance was semi-skilled and medium, landscape laborer/supervisor was skilled and heavy, and offset press operator was semi-skilled and light per the Dictionary of Occupational Titles but medium as performed by Bussard. (Tr. 308-10). The ALJ then posed the following hypothetical question assuming Bussard's age, education, and past work experience. In addition, he assumed:

> [S]uch an individual is essentially capable of the requirements of light work. Lift and carry, push and pull 20 pounds occasionally, 10 pounds frequently. Stand and walk six hours a day, sit six to eight hours a day. Nor climbing of ladders, ropes, or scaffolds. Posturals would be all on an occasional basis. Add a provision that the person cannot work with the public. With those limitations could such an individual do the work as a press operator? (Tr.310).

Myers testified that such an individual could perform Bussard's past work as a press operator. She went on to testify that there were other kinds of work available, such as folding machine operator, light and unskilled; and laundry press operator, light and unskilled. (Tr. 310-12). Myers testified that an individual would not be able to maintain competitive employment if required to lie down up to two hours each day. (Tr. 312). She also stated there would be no work based on limitations reported by Bussard's psychiatrist and therapist. Myers stated that a person could miss work only one to two days a month to maintain competitive employment. (Tr. 313-14).

**II.     Discussion**

In reviewing the Commissioner's denial of benefits, this Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Travis v.*

8

*Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choices." *See Casey v. Astrue*, No. 06-3841, 2007 WL 2873647, at *1 (8th Cir. Oct. 4, 2007).

Bussard alleges several errors committed by the ALJ. The Eighth Circuit Court of Appeals requires an ALJ to consider all evidence in the record when determining a claimant's residual functional capacity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001) (citation omitted). In this case, the Court need not address all errors alleged by Bussard, because it concludes that the ALJ erred in disregarding the opinions of Michael Navato, M.D., and Margaret Weiler, LSCSW. Moreover, the testimony of the vocational expert, Barbara Myers, establishes that Bussard is entitled to benefits.

A treating physician's opinion is generally given controlling weight. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). However, a treating physician's opinion does not automatically control because the record must be evaluated as a whole. *See Pirtle v. Astrue*, 479 F.3d 931, 933 (8th Cir. 2007). In this case the record as a whole supports the opinions of the treating physician.

The ALJ accorded "significant weight" to the opinion of consulting physician J. Scott Morrison, M.D. ("Morrison"), who concluded that Bussard had sought treatment from Navato "sporadically" and that his activities of daily living suggested that any limitations he had were physical in nature and that "[t]hese data suggest that he is not significantly limited, from a

9

psychological perspective, in work-related activities." (Tr. 238). In addition, the ALJ completely dismissed Navato's Mental Source Statement and Mental Assessment forms as "not supported by the overall record." (Tr. 16).

The ALJ plainly erred by according Morrison's opinion "significant weight" and disregarding Navato's Mental Source Statement and Mental Assessment forms. There is no evidence that Morrison considered the limitations imposed by Bussard's anxiety, particularly his panic attacks and inability to complete specific tasks like jury duty. The ALJ took inconsistent and contradictory positions with respect to Navato's opinion, using Navato's statement that Bussard's symptoms were "stable with treatment and no apparent side effects of medication" to deny benefits, but rejecting Navato's Mental Source Statement indicating that Bussard's ability to follow work rules, relate to co-workers, deal with public, interact with supervisors, deal with work stress, and maintain attention and concentration was poor. Nor does the ALJ acknowledge evidence that Bussard had problems with Lexapro and stopped taking the medication because of side effects. (Tr. 241-43). The ALJ indicated Bussard started treatment with Navato in December 2005, while Bussard testified he had seen him since 1997, and there are notes in the record from Navato dating from September, 2003. (Tr. 15, 150, 303). Furthermore, the ALJ only discussed three times that Bussard was seen by Navato, while the record contains evidence from eleven visits. Moreover, Bussard's anxiety was supported by other treating physicians in the record, like Boyd and Menon. (Tr. 160, 193).

10

Moreover, the ALJ erred in concluding that the opinions of Weiler, Bussard's therapist and licensed social worker, could be disregarded as "not an accepted medical source under the regulations." (Tr. 16). SSR 06-3p specifically directs those making disability determinations to consider the opinions of licensed clinical social workers for purposes of "impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-3p; *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007). In this case, Weiler's assessment was wholly consistent with Navato's opinions and the ALJ erred in according Weiler's assessment no weight.

In this case, the Court need not remand Bussard's petition to the ALJ as the vocational expert testified that had the ALJ's assessment been based on the opinions of Navato and Weiler, Bussard's limitations would "preclude[] competitive work." (Tr. 314).

## III. Conclusion

Accordingly, it is hereby

ORDERED that Bussard's petition [Doc. # 7] is GRANTED. The decision of the ALJ is REVERSED and benefits are ordered to be paid for a period of disability beginning July 24, 2004 .

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

11

Dated: May 28, 2008
Kansas City, Missouri